UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHARLES A. CRAYTON, <br><br> Plaintiff, <br><br> v. <br><br> WISCONSIN CENTRAL, LTD., <br><br> Defendant. | CAUSE NO.: 2:19-CV-285-TLS |

**OPINION AND ORDER**

The Plaintiff Charles A. Crayton, a train conductor, has brought suit against his employer, the Defendant Wisconsin Central, Ltd., for a back injury he sustained while throwing the KN 8 switch at the Defendant's Kirk Yard railyard on January 4, 2017. The Complaint alleges that the Defendant is liable under the Federal Employer's Liability Act, 45 U.S.C. § 51, for negligently causing his injury. This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 58] as well as an embedded Motion to Strike [ECF No. 69], both of which are fully briefed and ripe for ruling. Because the Plaintiff has not presented evidence to create a genuine dispute of material fact on the element of foreseeability, a necessary element of his negligence claim, the Courts grants the Defendant's Motion for Summary Judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's

claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of [her] case on which [she] bears the burden of proof; if [she] fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## MATERIAL FACTS

On January 4, 2017, the Plaintiff Charles A. Crayton was the conductor on Train L1521 in the Defendant's Kirk Yard in Gary, Indiana. ECF No. 60-2, Ex. 1. He went on duty at approximately 2:35 a.m., *id.*, and reported to the crew building to get his paperwork, get his engine assignment, review the daily bulletins, and perform a job briefing, ECF No. 60-3, 104:16–105:20. After picking up their locomotive and while en route to pick up their railcars, the Plaintiff and his engineer, Brian Flaherty, stopped to wait for another train crew that was switching railcars on the next track. *Id.* at 105:24–25, 107:16–108:20. Once the train crew on the adjacent track was finished, the Plaintiff's train was given permission to proceed over the track that had just been occupied by the other train crew. *Id.* at 108:21–109:21.

2

In order to proceed to their railcars, the Plaintiff would first need to operate a hand throw switch. *Id.* at 109:18–23. A switch is a mechanical device that enables trains to be guided from one track to another. ECF No. 60-4, ¶ 4. There are approximately 265 switches in Kirk Yard. *Id.* at ¶ 13.

The Plaintiff alleges he injured his back while attempting to operate the KN 8 switch in Kirk Yard that morning. ECF No. 60-2, Ex. 1; ECF No. 60-3, 122:16–124:4. He estimated his injury occurred at 3:45 a.m.; therefore, sometime shortly before the injury, he exited his locomotive to line the KN 8 switch for a train movement on 8 Track North. ECF No. 60-2, Ex. 1; ECF No. 60-3, 107:21–108:2, 110:2–11. The Plaintiff's locomotive was equipped with a camera that recorded his operation of the KN 8 switch. ECF No. 60-2, ¶ 5; ECF No. 60-2, Ex. 2; ECF No. 60-3, 120:9–23.

Prior to operating the switch, the Plaintiff inspected the switch points for rocks, debris, ice, and snow and found none. ECF No. 60-2, Ex. 2; ECF No. 60-3, 92:15–93:12, 94:1–16, 110:7–111:1. Ice can be cleared by the conductor if it can be seen. ECF No. 60-3, 93:10–12. The Plaintiff did not need to use the switch broom to clean out the switch. *Id.* at 121:14–18. He tried to operate the switch but was unable to get the switch points lined. *Id.* at 110:9–111:1. He inspected the switch a second time, tried to operate it, and was unsuccessful; he inspected the switch a third time, tried to operate it, and was unsuccessful; finally, the Plaintiff inspected the switch a fourth time and successfully lined the switch. *Id.*; ECF No. 60-2, Ex. 2. The Plaintiff had sufficient light to see the switch and did not see anything interfering with the switch. ECF No. 60-3, 114:1–7, 115:24–116:3. He testified that he did not call a supervisor, trainmaster, or anybody else and did not need assistance because "[i]t was just normal switching operations." *Id.* at 121:4–13.

However, the Plaintiff testified that he felt a sharp pain when he got the switch halfway up on his final attempt to operate it. *Id.* at 121:25–124:4; *see also* ECF No. 60-2, Ex. 1. After operating the KN 8 switch, the Plaintiff operated another switch. ECF No. 60-3, 122:23–123:1. The Plaintiff's locomotive then connected to a series of railcars, and the Plaintiff connected the air hose from his locomotive to those railcars. *Id.* at 124:14–125:1. He released a handbrake on the railcars, felt more pain, realized the pain was searing, and called his supervisor to report an injury. *Id.* at 124:16–126:3. On the Report of Personal Injury form, the Plaintiff indicated in response to a question about whether his injury was caused by any defects in tools or equipment: "hard to throw switch." ECF No. 60-2, Ex. 1. After the Plaintiff reported his injury, employees Ervin Goodwin, Toby Smith, and Jim Fuchs inspected and operated the KN 8 switch without incident and did not note any defects. ECF No. 60-2, Exs. 3–5; ECF No. 60-5, ¶¶ 3–5; ECF No. 60-6, ¶¶ 4–6. Goodwin and Fuchs state that there was no visible snow or ice on the ground or in or around the KN 8 switch at the time of their inspection at 5:47 a.m. that day. ECF No. 60-5, ¶ 6; ECF No. 60-6, ¶ 7.

As required by Federal Railroad Administration ("FRA") regulations and the Defendant's company rules, switches in Kirk Yard are inspected monthly by a qualified track inspector. ECF No. 60-4, ¶ 5. In the year preceding the Plaintiff's injury, the KN 8 switch was inspected regularly in compliance with FRA regulations, the switch was operated at each inspection to confirm it would properly align, and no defects or exceptions were found, including during the December 9, 2016 inspection—the last before the Plaintiff's injury on January 4, 2017. *Id.* at ¶¶ 6–8. The KN 8 switch was operated frequently every day. ECF No. 60-5, ¶ 7; ECF No. 60-6, ¶ 8. From the date of the last inspection to the date of the Plaintiff's injury, there were no reports of the KN 8 switch being hard to throw or defective. ECF No. 60-4, ¶ 14. Prior to this injury, the

Plaintiff regularly operated the KN 8 switch and never reported it as defective. ECF No. 60-3, 118:13–23, 119:18–20.

During his career, the Plaintiff operated over 500 switches and possibly over 1,000 switches. *Id.* at 98:6–22. He testified that he felt comfortable asking for assistance if he needed it. *Id.* at 62:1–23. The Plaintiff never encountered a switch that he considered unsafe to operate, but if a switch is "bad ordered," it must be reported. *Id.* at 71:6–18, 73:8–13.

Elledge, Goodwin, and Fuchs stated that, every time a switch is operated it constitutes an informal inspection of the switch. ECF No. 60-4, ¶ 10; ECF No. 60-5, ¶ 8; ECF No. 60-6, ¶ 9. If snow, ice, or debris are noted during such an informal inspection, an employee can attempt to remove it with a switch broom if it can be done safely. ECF No. 60-4, ¶ 11. If a switch will not safely operate, or if an employee does not feel comfortable attempting to clear a switch, the employee can report the switch for investigation and repair, if necessary. *Id.* at ¶¶ 11–12. Employees are responsible for letting supervisors know about problems with a switch, ECF No. 60-3, 67:23–68:2; ECF No. 60-6, ¶ 9, and are empowered to take a switch out of service, ECF No. 60-4, ¶ 12. The Plaintiff is not aware of any instances in which he raised an issue with a switch that was not addressed. ECF No. 60-3, 67:11–68:8.

Brian Flaherty was the locomotive engineer employed by the Defendant assigned to work with the Plaintiff on January 4, 2017. ECF No. 66-2, ¶ 2. In a handwritten statement given to the Defendant that same day following the Plaintiff's injury, Flaherty described the Plaintiff as being unable to "get [the] switch handle down all the way until the third time" and stated, "Apparently we later learned that switches were freezing since 0200." *Id.* at p. 6. In a declaration obtained by the Plaintiff on approximately September 14, 2022,[1] after the Defendant filed the instant motion

---

[1] As noted by the Defendant, although the document is titled an "affidavit," it does not meet the requirements of an affidavit because it is not sworn before someone authorized to administer oaths. *See*

5

for summary judgment, Flaherty stated: "After [the Plaintiff's] injury the railroad trainmaster on duty said to me, 'the switches have been freezing up in the yard (Kirk) since 2:00 that morning.'" ECF No. 66-2, ¶ 12.[2] Flaherty also states in the declaration that, after his review of the video and based on his experience and observation of the Plaintiff attempting to operate the switch, he believes the switch was frozen. *Id.* at ¶¶ 15–17.

The Plaintiff's liability expert, Brian Hansen, inspected the KN 8 switch on April 22, 2021, and testified that the switch had a defect, namely excessive loss of motion in the switch, which he describes as "hav[ing] to move the handle quite a ways before the switch points would move." ECF No. 66-1, 46:4–14. He testified that the loss of motion was an FRA deviation that should have been reported. *Id.* at 97:14–16. However, Hansen did not review any inspection records from the time period of his inspection in 2021. *Id.* at 97:25–98:3. He only reviewed inspection reports pre-dating the Plaintiff's January 2017 injury. *See* ECF No. 66-3, p. 3.

Hansen testified that his inspection on April 22, 2021, showed that the switch had not been properly maintained. ECF No. 66-1, 68:14–16. He found "large debris scattered throughout the switch, allowing ice to build up in the switch," and "poor lubrication, having ballast or debris in the cribs where . . . switch rods and throw rods are located, which can interfere with the lining of a switch." *Id.* at 70:12–20. He testified that those are conditions known to cause injury. *Id.* at 68:20–21. Hansen also testified that he did not know if any of those conditions existed on

---

*Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985). The document also does not meet the requirements of a declaration under 28 U.S.C. § 1746 because it is not dated. However, the Defendant obtained a second declaration by Flaherty stating he executed the first declaration on approximately September 14, 2022. ECF No. 69-2.

[2] In accordance with N.D. Ind. L.R. 56-1(f), the Defendant filed a motion to strike within its reply brief, asking the Court to strike Flaherty's declaration as obtained in violation of Indiana Rule of Professional Conduct 4.2. The Defendant argues that Flaherty was an employee who could not be contacted by Plaintiff's counsel without first consulting with defense counsel. The Plaintiff responds that Rule 4.2 is inapplicable in this instance. Because the declaration's contents do not raise a genuine issue of material fact, the Court denies as moot the embedded motion to strike.

January 4, 2017. *Id*. at 68:10–18. He did not know and has no evidence of whether, in January 2017, the switch was lubricated, *id.* at 61:14–62:9; there was any debris in the switch, *id.* at 67:15–21, 73:13–23; or there was a rock or other foreign particle lodged between a switch point and the rail, *id.* at 130:21–131:3. Hansen had no reason to disbelieve the Plaintiff that it was "normal switching" that day and that he did not need assistance, *id.* at 72:13–16, or that he had no reason to use either the broom or the ice pick prior to throwing the KN 8 switch, *id.* at 75:4–11. Hansen testified that he did not know when it last snowed or rained prior to January 4, 2017, *id.* at 93:16–18, 94:9–16, and that he did not have evidence that the switches were not completely cleared out following the last snow event prior to the date, *id.* at 93:24–94:2.

## ANALYSIS

The Defendant seeks summary judgment on the basis that the Plaintiff has failed to establish the foreseeability element of his negligence claim under the Federal Employer Liability Act (FELA), arguing that the Plaintiff has failed to show that the Defendant had actual or constructive notice of the defect in the KN 8 switch that injured the Plaintiff. "The FELA provides a federal remedy for railroad employees who are injured on the job." *Abernathy v. E. Ill. R.R. Co.*, 940 F.3d 982, 988 (7th Cir. 2019). The statute provides, in relevant part:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or *by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment*.

45 U.S.C. § 51 (emphasis added). To establish a FELA claim, a plaintiff must prove the common law elements of negligence, including duty, breach, foreseeability, and causation. *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998); *Abernathy*, 940 F.3d at 988.

7

As the parties recognize, FELA is a remedial statute with a lower burden of proof such that an employee is entitled to a jury trial if he has adduced any evidence sufficient to "justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957); *see Abernathy*, 940 F.3d at 988; *Ruark v. Union Pac. R.R. Co.*, 916 F.3d 619, 625 (7th Cir. 2019); *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014). In other words, this is "a relaxed standard of causation." *Brown*, 765 F.3d at 771 (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994)). However, FELA is not a workers' compensation statute and, thus, "does not mean that an employer is responsible for any injury that occurs in the course of employment." *Ruark*, 916 F.3d at 625 (quoting *Gottshall*, 512 U.S. at 543–44). A plaintiff must still offer evidence creating a genuine issue of fact on each element of the common law elements of the negligence claim. *Id.* at 625–26 (quoting *Green v. CSX Transp., Inc.*, 414 F.3d 758, 766 (7th Cir. 2005)).

In this case, the Defendant seeks summary judgment only as to the foreseeability element. "Reasonable foreseeability of harm . . . is indeed 'an essential ingredient of [FELA] negligence.'" *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011) (quoting *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 117 (1963)); *see LeDure v. Union Pac. R.R. Co.*, 962 F.3d 907, 910 (7th Cir. 2020), *aff'd*, 142 S. Ct. 1582 (2022). To satisfy this element, the employee must offer evidence of "circumstances which a reasonable person would foresee as creating a potential for harm." *LeDure*, 962 F.3d at 910 (quoting *Holbrook v. Norfolk S. Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005)). Thus, "[t]he plaintiff 'must show that the employer had actual or constructive notice of those harmful circumstances.'" *Id.* at 911 (quoting *Holbrook*, 414 F.3d at 742 (citing *Williams*, 161 F.3d at 1063)). Importantly, the relaxed standard of causation

in FELA cases does not apply to the element of notice/foreseeability. *Coffey v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 479 F.3d 472, 476 (7th Cir. 2007) ("The essential point is simply that causation and failure to exercise due care are separate inquiries, and the relaxation of common law standards of proof applies to the first rather than to the second.").[3]

As argued by the Defendant, the Plaintiff has not offered evidence to create a genuine dispute of fact that the Defendant had actual or constructive notice of any defective condition of the KN 8 switch that allegedly caused the Plaintiff's injury. *See LeDure*, 962 F.3d at 911; *Holbrook*, 414 F.3d at 741, 742. The [railway] regulations require that "each switch . . . shall be inspected on foot at least monthly." 49 C.F.R. § 213.235(a). The undisputed evidence shows that the KN 8 switch was inspected monthly by a certified track inspector for the year prior to the Plaintiff's injury, with the last inspection occurring on December 9, 2016. Over the next twenty-six days, despite the KN 8 switch being operated frequently, no one reported any problems with the switch until January 4, 2017, when the Plaintiff was injured. That day, the Plaintiff looked at the KN 8 switch prior to operating it and found no issues that he believed would make the switch unsafe to operate. He determined that he did not need to use the snow/ice broom. The Plaintiff had previously thrown 500 to 1,000 switches, and he knew that if a switch was defective or difficult to throw, he could have and should have reported it to the Defendant. Yet, he did not report any issues with the switch to the Defendant either before attempting to throw the KN 8 switch or after any of his first three unsuccessful attempts to throw it.

In response to summary judgment, the Plaintiff makes two arguments to show that the Defendant had notice of a defect in the KN 8 switch prior to his injury. First, the Plaintiff

---

[3] Thus, the cases addressing the relaxed *causation* standard cited by the Plaintiff are inapplicable as the Defendant has not moved for summary judgment on causation. *See, e.g.*, *Crompton v. BNSF Ry. Co.*, 745 F.3d 292, 298 (7th Cir. 2014); *Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 910–12 (7th Cir. 2012).

contends that the Defendant had notice of switches freezing in the yard the morning he was injured. Second, he offers the expert opinion of Brian Hansen that the KN 8 switch was in a defective condition. For the following reasons, the Plaintiff has failed to create a genuine dispute of fact on the issue of notice related to his injury on January 4, 2017.

1. *Freezing Switches*

Noting that he was injured at 3:45 a.m., the Plaintiff contends that there is evidence the railroad knew since 2:00 a.m. that morning that switches were freezing in the yard. In support, he first cites the declaration of Brian Flaherty, the locomotive engineer working with him that morning. The only statement in the declaration related to notice is: "After [the Plaintiff's] injury the railroad trainmaster on duty said to me, 'the switches have been freezing up in the yard (Kirk) since 2:00 that morning.'" However, this vague statement is insufficient to create a genuine issue of fact on the issue of notice. The statement does not indicate whether any frozen switches were reported to the Defendant's supervisors, who made any statements that switches had been freezing up in the yard, and, perhaps most importantly, when any such statements were made, if they were in fact communicated to the Defendant.

It is unclear from Flaherty's declaration statement whether the railroad trainmaster was stating that someone reported freezing switches at 2:00 a.m. or whether someone reported at 4:00 a.m. that switches had been freezing for the last two hours. Flaherty's statement also does not explain how, from whom, or at what time the trainmaster obtained the information that formed the basis of his statement to Flaherty. And, Flaherty himself does not state that he has personal knowledge of any switches freezing. *See* Fed. R. Evid. 602.[4] Flaherty's handwritten statement given to the Defendant on the day of the Plaintiff's injury stated only: "Apparently we later

---

[4] While the Plaintiff contacted Flaherty and obtained his declaration after the close of discovery for purposes of responding to summary judgment, the Plaintiff did not depose Flaherty during discovery.

learned that switches were freezing since 0200." ECF No. 66-2, p. 6. This contemporaneous statement is even more vague that the later declaration. Flaherty's September 2022 declaration is insufficient to show that the Defendant had notice of freezing switches before the Plaintiff's injury at 3:45 a.m. *See, e.g.*, *Lusher v. Norfolk S. Ry. Co.*, No. 2:12-CV-37, 2014 WL 3894347, at *5 (N.D. Ind. Aug. 8, 2014) (finding that the plaintiff's vague deposition testimony on notice insufficient because the plaintiff did not identify anyone who had made a purported comment or the timeframe of any such comment and did not provide any specific information about an alleged prior injury to another employee).

Second, the Plaintiff notes generally that his expert, Brian Hansen, testified about "[t]he issue of freezing switches that early morning at Kirk Yard" but does not discuss any of Hansen's specific testimony. Pl. Br. 11, ECF No. 65. Most of the cited testimony is general background information on different ways ice can build up in a switch, including the presence of black ice, ECF No. 66-1, 83:22-84:9; Hansen's general statement in his report that switches must be kept free from obstructions and snow and ice, *id.* at 93:4–8; that during a snow event, a railroad's maintenance of way department clears switches, *id.* at 93:8–15; and that switches should be maintained to operate the same in summer as in winter, *id.* at 72:1–7. Hansen testified that there would have been freezing temperatures in January 2017. *Id.* at 72:1–2. When asked if he had any evidence of ice buildup in the KN 8 switch on January 4, 2017, Hansen testified that it was "his understanding that . . . employees had discussed the fact that switches had been freezing up during that night." *Id.* at 83:7–12. However, the cited deposition testimony does not identify who discussed switches freezing, when it was discussed, or whether it was reported and, thus, does not create a genuine dispute of fact on the issue of notice. If Hansen's "understanding" is based on Flaherty's handwritten statement to the railroad on January 4, 2017, it is too vague to

11

establish notice for the same reasons. To the extent the cited portions of Hansen's deposition go to his opinion that the KN 8 switch was not properly maintained, the Court addresses that testimony in Part 2 below.

Next, the Plaintiff cites the video and testimony evidence that he unsuccessfully attempted to throw the KN 8 switch three times before it finally went over on the fourth try. But this is not evidence that the Defendant had notice of ice in the switch or of any defect in the switch. As detailed above, the Plaintiff himself looked at the switch prior to throwing it; he had enough light to see the switch; he did not see anything in the switch; and he determined that he did not need the switch broom to clear the switch. The Plaintiff was in a position to discover that the switch had ice and report the problem, and he did not. In fact, he testified that his attempts to throw the switch were "normal switching operations." In other words, the Plaintiff's difficulty throwing the switch could not have put the Defendant on notice since the Plaintiff did not report any problem.

Finally, the Plaintiff cites case law regarding climactic and atmospheric conditions for the proposition that a "railroad is legally responsible, within yard limits, to remove unsafe accumulations of snow and ice." Pl. Br. 2, 12 (citing *McDonald v. Ne. Ill. Reg'l*, 249 F. Supp. 2d 1051 (N.D. Ill. 2003); *Anderson v. Elgin, Joliet & E. Ry. Co.*, 227 F.2d 91 (7th Cir. 1955); *Fort Worth D.C. Ry. Co. v. Smith*, 206 F.2d 667 (5th Cir. 1953); *Barrett v. Toledo, Peoria & W. R.R. Co.*, 334 F.2d 803 (7th Cir. 1964)). But the Plaintiff cites no evidence of atmospheric conditions of snow and/or ice in the Kirk Yard prior to the Plaintiff's injury other than Hansen's testimony that there would have been freezing temperatures in January.

The Plaintiff has not offered evidence to create a genuine dispute of fact as to whether the Defendant had actual or constructive notice of frozen switches generally, or the KN 8 switch specifically, prior to his injury on January 4, 2017.

2. *Expert Testimony Regarding the Condition of the KN 8 Switch*

A railroad has "a duty to provide a safe workplace that contemplates reasonable inspections of equipment and appliances." *Murphy v. Wis. Cent. Ltd.*, No. 19-CV-1232, 2022 WL 1166537, at *6 (E.D. Wis. Apr. 20, 2022) (citing *Williams*, 161 F.3d at 1063). To establish constructive notice, a plaintiff must show that the defendant could have discovered the allegedly defective condition by a reasonable inspection and remedied the situation. *See Williams*, 161 F.3d at 1063. The Plaintiff offers the opinion of his expert, Brian Hansen, that there were defects in the KN 8 switch that a competent inspection should have discovered such that the Defendant had constructive notice of an allegedly hazardous condition of the KN 8 switch.

Relying on Hansen's deposition testimony, the Plaintiff argues that the facts are in dispute as to whether the Defendant performed a competent inspection of the KN 8 switch prior to the Plaintiff's injury on January 4, 2017. However, Hansen's testimony does not support this conclusion. Hansen inspected the KN 8 switch on April 22, 2021, and opined that the switch had defects and that there was excessive loss of motion in the switch at the time of his inspection. In light of his other testimony, these opinions based solely on his inspection four years after the Plaintiff's injury are not material to whether the switch was in a defective condition on January 4, 2017. Hansen testified that he does not know about the condition of the KN 8 switch on January 4, 2017, and does not know what may have caused the switch to stop on January 4, 2017. Nor is there any testimony from the Plaintiff or anyone else of a known defect in the KN 8 switch on January 4, 2017. *See Jaranowski v. Ind. Harbor Belt R.R. Co.*, No. 2:20-CV-484, 2022

WL 2065022, at *3 (N.D. Ind. June 8, 2022) (finding no evidence of notice sufficient to create a jury issue), *rev'd on reconsideration on other grounds*, 2022 WL 3042236 (N.D. Ind. Aug. 2, 2022).

Hansen also opined that the formal inspections prior to his April 2021 inspection were insufficient because the deficiencies he found in the KN 8 switch in April 2021 were not reported to the Defendant. However, there is no factual basis for this opinion because Hansen did not review the Defendant's inspection records from the time period of his 2021 inspection; he only reviewed inspection reports pre-dating the Plaintiff's injury in January 2017. Notably, Hansen has not identified any deficiencies in the pre-January 2017 inspection reports other than speculation based on his inspection four years later in 2021. *See* ECF No. 66-1, 70:21–71:21, 99:3–8, 104:8–15, 104:24–105:5; *cf. Boyd v. CSX Transp., Inc.*, 2:08-CV-108, 2011 WL 854350, at *9 (N.D. Ind. Mar. 7, 2011) (agreeing with the defendant that, if the expert's inspection of the switch two years after the injury was the sole evidence provided, it would be insufficient to withstand summary judgment on the issue of the track conditions; but finding a genuine dispute of fact for trial, noting the plaintiff's expert considered other testimony as well as the defendant's records from the relevant time period, allowing the expert to "highlight[] discrepancies between the track inspector's reports and the track geometry car records to establish that the Defendant did not properly conduct its track inspections").

In *LeDure*, the plaintiff slipped on a "slick" substance on the exterior walking way of a locomotive while working and injured himself. 962 F.3d at 909. Affirming the district court holding that the plaintiff failed to provide sufficient evidence to prove his injuries were reasonably foreseeable, the Seventh Circuit Court of Appeals noted that the plaintiff did not claim that the railroad had notice of the slick spot or any hazardous condition but that the

railroad should have inspected the locomotive and cleaned up the spot. *Id*. at 911. However, because there was "no evidence that an earlier inspection would have cured the hazard, . . . a jury could not find [the railroad] knew or should have known about the oil or its hazard to [the plaintiff]." *Id.* (citing *Holbrook*, 414 F.3d at 742).

Similarly, the Plaintiff has offered no evidence that an earlier inspection would have cured any defect in the KN 8 switch on January 4, 2017. A formal inspection of the KN 8 switch was conducted monthly pursuant to the FRA regulations, including on December 9, 2016.[5] In addition, the KN 8 switch was used daily, subject to an informal inspection each time, and no report of any defect was made. And again, the Plaintiff, an experienced conductor, used the switch regularly and reported no defects either prior to January 4, 2017, or after any of the first three times he unsuccessfully attempted to throw the switch that day. Although the Plaintiff is not a certified inspector conducting formal inspections required by 49 C.F.R. § 213.235(a), he was in a position, like any other conductor, to have discovered and reported conditions that may have made the KN 8 switch dangerous. Indeed, in the absence of more frequent formal inspections, which were not required by statute, it seems any such condition would have been discovered by conductors such as the Plaintiff or other employees using the switch or moving through the railyard. *See, e.g.*, *Barger v. CSX Transp., Inc.*, 110 F. Supp. 2d 648, 655 (S.D. Ohio 2000) ("[D]aily operation of the switch is essentially equivalent to routine inspection."). Notably,

---

[5] The Plaintiff cites *Ast v. BNSF Railway Co.*, No. 09-2519, 2011 WL 1899284, *6 (D. Kan. May 19, 2011), for its holding that it was reasonably foreseeable that an employee could be injured if a switch is not routinely inspected or maintained. As a general principle, this is undisputed. However, *Ast* is not persuasive on its facts because the only inspection record produced by the defendant was for the day after the plaintiff's injury, and that record showed the pounds of pressure necessary to throw the switch exceeded permissible limits by nearly 200% in some places. *Id.* at *1. The court found this record reasonably suggested that the defendant had not performed regular inspections or maintenance on the switch in question. *Id.* at *6. In contrast, the evidence in this case contains a year's worth of monthly inspection records prior to the Plaintiff's injury with no report of any defects.

the Plaintiff has not identified any other way the Defendant would be on notice of defects or dangerous conditions in the interval between official inspections. Thus, the Defendant had no opportunity to correct the alleged problem that caused the Plaintiff's difficulties with the switch.

More generally, the Plaintiff argues that the issue of actual or constructive knowledge is for the jury. However, the cases he cites involved fact issues to be decided by the jury. *See, e.g.*, *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990) ("It is the province of the jury to weigh myriad factors, including the nature of the task and the hazard it entails, in determining whether employer fault played any role in the employer's injury."); *Urie v. Thompson*, 337 U.S. 163, 178–79 (1949) (recognizing on a motion to dismiss that the railroad's "knowledge, actual or constructive, of the alleged inadequacies of the sanding equipment was a jury question" and finding that the facts as alleged were sufficient to state a claim of negligence); *Lavender v. Kurn*, 327 U.S. 645, 653 (1946) (in considering whether a jury verdict was supported by the evidence, the Supreme Court wrote that, "[w]henever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference").

The record in this case, which includes Hansen's testimony, is devoid of any evidence that the Defendant had constructive notice of an allegedly hazardous condition of the KN8 switch that resulted in the Plaintiff's injury. *See Holbrook*, 414 F.3d at 745 ("Because plaintiff's constructive notice argument 'rests on mere speculation and conjecture,' it too must fail." (quoting *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998) (affirming a grant of summary judgment against a FELA plaintiff where the plaintiff "introduced no evidence to show that an earlier inspection would have revealed or cured the [defective condition], or that the

16

railroad had notice of the defect prior to the accident"))). In other words, there is no factual dispute for a jury to resolve.

Accordingly, the Plaintiff cannot establish the foreseeability element of his FELA negligence claim, and the Court grants the Defendant's motion for summary judgment. As a result, the Court does not reach the Defendant's alternate argument that the FELA claim is precluded by the Federal Railway Safety Act (FRSA) and its regulations. *See Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1102 (7th Cir. 2019) (declining to reach several issues because the plaintiff's failure to prove causation was fatal to his FELA claim), *on appeal from Kopplin v. Wis. Cent. Ltd.*, No. 2106-cv-588, 2017 WL 7048811, at *1–3 (E.D. Wis. Oct. 17, 2017) (explicitly finding that the plaintiff's FELA claim was precluded by the FRSA).

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES as moot the Defendant's Motion to Strike embedded in its reply brief [ECF No. 69] and GRANTS Wisconsin Central Ltd.'s Motion for Summary Judgment [ECF No. 58]. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendant Wisconsin Central, Ltd. and against the Plaintiff Charles A. Crayton.

SO ORDERED on March 31, 2023.

      s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT